## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **LISA M. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 10 C 5541** |
| **v.** | ) | |
| | ) | **Magistrate Judge Morton Denlow** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Lisa M. White ("Claimant") brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Claimant raises the following issues in support of her motion: (1) whether the ALJ fully accounted for limitations from Claimant's mental impairments in the Residual Functional Capacity assessment; (2) whether the ALJ gave sufficient weight to the opinion of Dr. Anwar, Claimant's treating psychiatrist; and (3) whether the ALJ properly evaluated the credibility of Claimant's allegations according to the requirements of SSR 96-7p. For the following reasons, the Court grants Claimant's motion for summary judgment, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the

1

Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS

**A.    Procedural History**

Claimant filed for DIB and SSI in January 2009, alleging a disability onset date of January 9, 2008.  R. 120-26.  Claimant later amended her application to allege an onset date of January 9, 2009.  R. 147.  The Social Security Administration ("SSA") denied both applications on May 13, 2009.  R. 62-70.  Claimant then filed a request for reconsideration, which was denied on September 10, 2009.  R. 71-76.  Thereafter, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  R. 81.

On January 26, 2010, ALJ Janice M. Bruning presided over a hearing at which Claimant appeared with her attorney, Andrew A. Barone.  R. 26-56.  Claimant and Aimee Mowery, a vocational expert ("VE"), testified.  On March 10, 2010, the ALJ rendered a decision finding Claimant not disabled under the Social Security Act.  R. 10-21.  Specifically, the ALJ found that Claimant has "the residual functional capacity to perform light work . . . with only occasional climbing, balancing, stooping, crouching, kneeling or crawling; avoiding concentrated exposure to lung irritants; no contact with the general public and only occasional contact with co-workers or supervisors; and involving simple repetitive tasks."  R. 17.

Claimant then filed for review of the ALJ's decision to the Appeals Council.  R. 8-9. On July 16, 2010, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  R. 1-3.  Claimant subsequently filed this action for review pursuant to 42 U.S.C. § 405(g).

**B.    Hearing Testimony - January 26, 2010**

**1. Lisa White - Claimant**

At the time of the hearing, Claimant was forty-seven years old, single, and rented a room in a house. R. 29-30, 59. Claimant's highest educational level is a GED. R. 29. Claimant's most recent employment as a limo driver ended January 8, 2009, when she stopped working "because it was becoming too stressful and . . . I was fearing a lot." R. 31. Claimant testified that she was being asked to work more hours than her doctors recommended. R. 32. Since quitting that job, she has been "looking for jobs all over the place" and at the time of the hearing she anticipated enrolling in college courses in September 2010. R. 30-31.

Claimant testified she can walk a couple of blocks before getting tired and her breathing becomes difficult. R. 38. She can stand in one spot for approximately five minutes before needing to move around and she can sit for 15-20 minutes before needing to stand. R. 38-39. Claimant has difficulty climbing stairs and when she does climb stairs to do her laundry she has to stop and rest. R. 39. Lifting 20 pounds causes pain in her neck. *Id.* She is sometimes "not . . . able to coordinate [her] brain to [her] hands." R. 40. As a result of self-treatment she has been able to use her hands with only some numbness in her pinkies when she types. *Id.* Claimant has difficulty bending, stooping, crouching, crawling, and kneeling because of previous broken bones and occasionally has trouble with balance. *Id.* Claimant drives daily, does not cook often, washes dishes, and does household chores such as laundry and taking the garbage out. R. 40-41. Claimant testified that she attends church, volunteers at her church, participates in weekly Bible studies, uses a computer, attends AA meetings, and

3

cares for her two cats.  R. 43-44.

Claimant previously saw a chiropractor and took medication for back pain.  R 33.  The only side effect was some fatigue.  *Id*.  Claimant testified that if she has to reach forward or extend her hands upwards, a shooting pain travels along her shoulders.  *Id*.  Stress triggers her back and neck pain.  R. 34-35.  At the time of the hearing, Claimant was taking medication for bipolar disorder, asthma, anxiety, and pain.  R. 34.

Claimant testified that she has difficulty thinking, concentrating, and focusing.  R. 35. She has trouble remembering dates and responsibilities and will go days without remembering to brush her teeth.  *Id*.  Claimant has crying spells at least once per week.  R. 36.  Claimant stated that she is often afraid and her friends tell her she "[sees] things that are happening and [her friends] don't see them and they tell [Claimant] that [she] is paranoid."  R. 37.  Claimant described a history of thoughts of harming herself.  *Id*.  At the time of the hearing, she had "fleeting thoughts [of harming myself] not nearly like they used to be"; when she does have those thoughts, she stays home and cries.  *Id*.

At the time of the hearing, Claimant was in remission from alcohol dependency and had maintained sobriety for approximately thirteen months.  R. 45.  Claimant testified that she has "tremendous ups and downs and mood swings."  *Id*.  Claimant stated she would not be able to work in the coming year because of the "fear, the stress, [and] the anxiety."  R. 47. When questioned about her decision to leave her job at the limousine company, Claimant explained that she quit because she "felt like she was at the end of [her] rope."  R. 49.  Finally, when asked about the type of work she believed she could perform, she testified she would

like to work some place where she could be by herself, not be required to perform a lot of physical labor, and not have someone "cracking a whip" over her back. R. 52.

### 2. Aimee Mowery - Vocational Expert ("VE")

The Vocational Expert, Aimee Mowery, described Claimant's most recent previous work experience as chauffeur/driver which was categorized by the Dictionary of Occupational Titles as a medium work, semi-skilled position with a Specific Vocational Preparation ("SVP") level of three. R. 54. Claimant has previous work experience as a forklift operator which is a medium work, semi-skilled job with a SVP of two. *Id*. She also worked as a production worker, which is an unskilled, light work position with a SVP of two. *Id*.

The ALJ asked the VE whether jobs exist that could be performed by a person of Claimant's age, education and work experience with the following limitations: only lift 20 pounds occasionally and 10 pounds frequently; stand or walk a total of six hours during an eight hour work day; sit at least six hours during an eight hour workday; avoid concentrated exposure to lung irritants; only occasionally climb, balance, stoop, crouch, kneel, and crawl; avoid contact with the public and have only occasional contact with supervisors and co-workers; be restricted to limited repetitive tasks; and have a production quota. R. 54. The VE answered that there are not any jobs based on the production quota limitation.[1] *Id*. When the ALJ removed the production quota limitation from the hypothetical, the VE responded that positions such as assembler (9538), hand packager (3733), and cleaner (10,140) are available

---

[1]The transcript is not entirely clear, but it appears the VE meant that there are not jobs available based on the limitation to jobs without a production quota. The ALJ then removes that limitation, so the next hypothetical would include jobs with production quotas.

in the region and an individual as described in the hypothetical would be able to perform those jobs. R. 54-55. The ALJ then asked "What if the individual would miss work or be off task about 20 percent of the time?" R. 55. The VE answered "No, Your Honor, those three occupations would not - ." *Id.*

## C.    Medical Evidence

The ALJ's decision regarding Claimant's physical impairments is supported by substantial evidence. The focus of the disagreement in this case is on Claimant's mental impairments. Thus, the Court will provide a brief review of the medical evidence supporting Claimant's physical limitations and then review the medical evidence regarding her mental impairments in more detail.

### 1. Physical Impairments

Beginning on January 30, 2009, Claimant received treatment from Dr. Chris Gruber at Provena St. Joseph Hospital for left neck and shoulder pain. R. 260. Dr. Gruber diagnosed a cervical neck strain (whiplash). R. 264. On February 5, 2009, Claimant saw Dr. Christopher Cascino, neurosurgeon. R. 276. The neurological exam was "completely normal." *Id.* An MRI was performed on February 6, 2009, with normal results. R. 275. X-rays of the cervical spine showed mild spondylosis (degenerative arthritis). *Id.* Dr. Cascino diagnosed Claimant's neck and shoulder pain as arthritic and stated that the condition "is not helped by surgery and these symptoms tend to wax and wane over time regardless of therapy." *Id.*

Claimant was seen by Dr. Roopa Karri on February 26, 2009 for an independent

consultative examination. R. 279-82. Claimant climbed on and off the examination table and walked 50 feet without support. R. 280. Dr. Karri noted a history of asthma, COPD with wheezing during the exam, and a mildly decreased range of motion in the neck and shoulder. *Id.*

On April 2, 2009, state agency reviewing physician Dr. Calixto Aquino assessed the following functional limitations: she can occasionally lift 20 pounds and frequently lift 10 pounds; stand, walk and sit for about six hours in an eight hour work day; and she should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 288-95. Dr. Charles Kenney reviewed and affirmed this assessment on September 9, 2009. R. 376-78.

Claimant treated with Dr. John Johnson, a chiropractor, from May 5, 2009 through October 2, 2009. R. 381-84. Over the course of treatment Claimant's neck pain varied from "quite intense" to "overall feeling quite a bit better" by her last visit. R. 381-84. Dr. Johnson completed a spinal disorders form in July 2009 in which he indicated that Claimant has neck, upper back and head pain, suboccipital and cervical tenderness, and facial numbness. R. 373. Ambulation is normal with limited range of motion of the cervical spine. R. 374. Dr. Johnson stated Claimant can only lift ten pounds for a short period of time and not repetitively; can only sit for 30 minutes at a time, and requires an alternate position for 10-15 minutes. *Id*.

## 2. Mental Impairments

### a.     Dr. Roopa Karri - Independent Consultative Examiner

During the February 26, 2009, consultation, Dr. Karri observed that Claimant appeared depressed. R. 282. However, Dr. Karri determined that all aspects of Claimant's mental

7

status were appropriate and normal at the time of the appointment. R. 282. Dr. Karri's concluding impression was a history of bipolar disorder, anxiety disorder, and obsessive compulsive disorder. *Id*.

### b.     Dr. Syed Anwar - Claimant's Treating Psychiatrist

Claimant treated with Dr. Anwar from March 2008 through November 2009. R. 405. After her initial assessment in March 2008, Claimant saw Dr. Anwar every 1-3 months. R. 395-406. Five office visits took place after the alleged onset date of January 9, 2009. R. 395-400.

On March 25, 2008, Dr. Anwar diagnosed bipolar disorder and alcohol abuse, and assessed a GAF score of 45.[2] R. 406. During the initial visit Claimant reported that her work was erratic because of her mood swings. *Id*. During the course of treatment, Claimant was consistently not suicidal, homicidal, or psychotic. R. 395-406. In April 2008, Claimant noted that Seroquel knocked her out and prevented her from working. R. 404. She was then prescribed Lamictal and Ativan, which she continued to take throughout the course of treatment. In June 2008, she noted that Lamictal was "good for her . . . . Her mood was stable." R. 403. She reported doing "fairly well" in June and July 2008. R. 402-03. In October 2008 she was "struggling a little bit" and was "a little bit stressed out" but "otherwise

---

[2]The GAF is a scale of zero through 100 used by medical health professionals to rate social, occupational, and psychological functioning of adults. <u>Diagnostic & Statistical Manual of Mental Disorders Text Revision </u>34 (4th ed. 2000). A GAF score from 41 to 50 means "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*.

doing fair." R. 401.  She continued to do "fair" though January 6, 2009 (three days before the alleged onset date) when she was recovering from "a bad time" but was "getting things back in order." R. 400.  She indicated she did not want to quit her job but it had been stressful.  *Id.* She "struggl[ed] a little bit" and was anxious in March 2009 but remained sober.  R. 399.  By June 2009 she was "doing fairly well."  In August 2009 she was struggling, felt overwhelmed and had high anxiety.  R. 397.  In October and November 2009, at the conclusion of her treatment with Dr. Anwar, she was doing "fair" and "staying good" during mood swings.  R. 396.

On October 28, 2009, Dr. Anwar submitted a letter on Claimant's behalf.  R. 388.  He stated that Claimant was under his care for depression and anxiety, has a diagnosis of bipolar disorder, and continues to experience mood swings.  R. 388.  Dr. Anwar opined that it is "difficult for her to function well" and she continues "to show impaired functioning in various areas of her life."  *Id.*

c.      **Dr. Anthony Peterson - State Consulting Psychologist**

On April 11, 2009, Claimant was evaluated by Dr. Peterson.  R. 297.  Claimant reported

that she left her job as a limo driver because her employer was "working [her] to death."  *Id.*

Dr. Peterson made the following findings.  Claimant was alert and oriented.  R. 300.  Her

cognitive skills are good, short term memory is fair, overall judgment is fair to good, and

conceptual thinking and fund of information are good.  *Id.*  Dr. Peterson's DSM-IV diagnoses

were: bipolar disorder, alcohol dependence in early full remission,  history of PTSD, history

of OCD, history of COPD, early menopause, neck injury, unemployment and abusive

relationships.  *Id.*

d.      **Dr. John Tomassetti- State Agency Reviewing Psychiatrist**

On May 11, 2009, Dr. Tomassetti conducted a psychiatric review of Claimant's mental

health records.  R. 301-14.  He found that Claimant has non-severe impairments, including a

history of bipolar disorder, anxiety and OCD.  R. 304-06.  Dr. Tomassetti concluded that

Claimant has mild restrictions in activities of daily living, mild difficulties in maintaining

social functioning, and mild difficulties in maintaining concentration, persistence or pace.  R.

311.  There were no episodes of decompensation.  *Id.*

**D.      The ALJ's Decision**

Following a hearing and review of the medical evidence, the ALJ entered an

unfavorable decision for Claimant, upholding denial of her application for DIB and SSI.  R.

21.  The ALJ reviewed Claimant's application under the requisite five step analysis. R. 15-21.

At step one, the ALJ found Claimant has not engaged in substantial gainful activity

10

since January 9, 2009, the alleged onset date. R. 15. At step two, the ALJ determined Claimant has the severe impairments of chronic obstructive pulmonary disorder, spondylosis of the cervical spine, obesity, bipolar disorder, post traumatic stress disorder, and a history of alcohol abuse. R. 15. At step three, the ALJ found Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. 16-17. The ALJ then considered Claimant's residual functional capacity ("RFC")[3] and found Claimant capable of performing "light work" with several limitations: only occasional climbing, balancing, stooping, crouching, kneeling or crawling; avoid concentrated exposure to lung irritants; no contact with the general public and only occasional contact with co-workers or supervisors; and only perform work involving simple, repetitive tasks. R. 17.

In assessing Claimant's RFC, the ALJ stated that she considered Claimant's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. R. 17. The ALJ concluded that Claimant's impairments could reasonably be expected to cause the symptoms described, but Claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible. R. 18.

The ALJ concluded that the medical evidence does not support the degree of limitations alleged. R. 19. Claimant's COPD is controllable with medications and she should avoid

---

[3] A residual functional capacity is the most that a claimant can do despite their physical and mental limitations. The Social Security Administration determines a claimant's RFC based on all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a).

exposure to lung irritants; her back disorder only poses limitations to the extent described in the RFC; and Claimant, while limited in her ability to engage in work activity, maintains the ability to perform simple, repetitive tasks with limited exposure to co-workers and no involvement with the public. *Id.* The ALJ explained that Claimant's involvement with AA and Bible study group at her church show that she is not as limited as alleged. *Id.*

The ALJ afforded "some weight" to Dr. Johnson, Claimant's chiropractor. While he is not a "generally accepted medical source" his opinion "indicated that conservative treatment" should alleviate symptoms, which is consistent with the objective medical evidence. *Id.* The ALJ also afforded Dr. Anwar's opinion "some weight." *Id.*

At step four the ALJ concluded that Claimant is unable to perform any past relevant work. *Id.* At step five, the ALJ found there are jobs that exist in significant number in the national economy that Claimant could perform. R. 20. Thus, the ALJ concluded that Claimant was not disabled under the Social Security Act. R. 20-21.

## II. LEGAL STANDARDS

### A.    Standard of Review

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* The reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with

or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Id.*; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when the record contains adequate evidence to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or an adequate discussion of the issues, it must be remanded. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports the findings. *Id*.

## B.    Disability Standard

Disability insurance benefits are available to a claimant who can establish he is under a "disability" as defined by the Social Security Act. *Liskowitz v. Astrue*, 559 F.3d 736, 739-40 (7th Cir. 2009). "Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

13

. . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a disability if he is unable to perform his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Gainful employment is defined as "the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

A five-step sequential analysis is utilized in evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). An ALJ must inquire, in the following order: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing other work. *Id.* Once the claimant has proven he cannot continue his past relevant work due to physical limitations, the ALJ must determine whether other jobs exist in the economy that the claimant can perform. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

### III. DISCUSSION

Claimant raises three issues in support of her motion: (1) whether the ALJ fully accounted for limitations from Claimant's mental impairments in the Residual Functional Capacity assessment; (2) whether the ALJ gave sufficient weight to the opinion of Dr. Anwar, Claimant's treating psychiatrist, under 20 C.F.R. § 4040.1527(d); and (3) whether the ALJ properly evaluated the credibility of Claimant's allegations according to the requirements of SSR 96-7p. The Court notes that, as a whole, the decision rendered by the ALJ was a thorough

14

and well-reasoned decision. The remand of one narrow issue is required by recent Seventh Circuit precedent.

## A. The ALJ Did Not Fully Account for Claimant's Mental Impairments in Concentration, Persistence, and Pace in the Hypothetical Posed to the VE.

In the RFC analysis, the ALJ found that Claimant "has the residual functional capacity to perform light work . . . with only occasional climbing, balancing, stooping, crouching, kneeling or crawling; avoiding concentrated exposure to lung irritants; no contact with the general public and only occasional contact with co-workers or supervisors; and involving simple repetitive tasks." R. 17. As is customary, the ALJ posed hypotheticals to the VE to determine if there are jobs available to someone with Claimant's background and limitations. R. 54-55. Claimant argues that the RFC analysis and resulting hypothetical did not sufficiently account for her mental impairments, namely her "moderate difficulties maintaining concentration, persistence or pace" found by the ALJ at step three of the analysis. R. 17. The ALJ then stated, "The claimant drives regularly, reads, uses a computer, and is enrolled in college to study business administration." *Id.* The ALJ did not adequately explain how she accounted for Claimant's limitations in concentration, persistence, and pace by limiting Claimant only to simple, repetitive tasks in the hypothetical posed to the VE.

The RFC is based on medical and other evidence in the record, including testimony by the claimant. *Craft*, 539 F.3d at 676 (7th Cir. 2008). All severe and non-severe medical impairments must be considered. *Id.* The hypothetical that an ALJ poses to a VE must encompass all limitations supported by medical evidence in the record. *Stewart v. Astrue*, 561

F.3d 679, 684 (7th Cir. 2009). The objective is to orient the VE to the totality of the claimant's limitations. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The Seventh Circuit suggests that the most effective way to ensure that the VE is fully apprised of the claimant's limitations is to include all of the limitations directly in the hypothetical. *Id.*

Limitations to "simple, repetitive tasks" in the hypotheticals posed to VEs do not generally account for limitations in concentration, persistence, and pace. *O'Connor-Spinner*, 627 F.3d 614, 620 ("In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."). The Seventh Circuit has recognized that the terms "concentration, persistence, and pace" may be omitted where it is clear that the ALJ has "specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id.* In the case at bar, the ALJ's failure to properly account for Claimant's limitations in this area, or explain how she did so, makes this case indistinguishable from *O'Connor-Spinner*, in which a remand was ordered. *Id.* at 621.

The ALJ posed three hypotheticals to the VE. R. 54-55. The first hypothetical described a person of Claimant's age, education, and work experience who: could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk a total of six hours during an eight hour work day; sit at least six hours during an eight hour workday, must avoid concentrated exposure to lung irritants; could only occasionally climb, balance, stoop, crouch, kneel, and crawl; must avoid contact with the public and have only occasional contact with supervisors and co-workers; could perform only limited, repetitive tasks; and must not have

16

  
a production quota. R. 54. The VE responded that no such jobs existed "based on the production quota."[4] *Id*. The ALJ then inquired whether there would be jobs if the production quota limitation was removed, to which the VE answered affirmatively and identified those jobs. *Id*. Finally, the ALJ asked, "What if the individual would miss work or be off task about 20 percent of the time?" R. 55. The VE replied, "No, Your Honor, those three occupations would not - " before the ALJ inquired about a different topic. *Id*.

The Seventh Circuit has identified two circumstances in which the exact language of "concentration, persistence, or pace" is not required in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 610. First, the precise language is not required where the VE has reviewed the medical record or heard testimony regarding the impairments. However, the exception is inapplicable where an ALJ poses a series of hypotheticals and implicitly asks the VE to focus exclusively on the hypotheticals. *Id*. Second, the exact language is not required where it is clear that the ALJ's alternative phrasing specifically excludes those tasks that someone with the particular limitation would be able to perform. *Id*.

The Commissioner argues this case falls within the second exception: that the limitation to simple, repetitive tasks captured Plaintiff's moderate difficulties in concentration, persistence, or pace. This exception is applicable where the inquiry includes a limitation directly related to an underlying cause of the claimant's limitations in concentration,

---

[4]As noted *supra*, note 1, the transcript is not entirely clear. It appears the VE meant that there are no jobs available based on the limitation to jobs without a production quota. The ALJ then removed that limitation, so the second hypothetical would include jobs with production quotas.

persistence, or pace. *O'Connor-Spinner*, 627 F.3d at 619. For example, the court in *O'Connor-Spinner* distinguished *Simila v. Astrue,* where the ALJ stated that the limitations in concentration, persistence, and pace stemmed from a separate disorder which was directly addressed in the RFC. *Id.* (citing *Simila v. Astrue*, 573 F.3d 503, 522 (7th Cir. 2009)). Even there, as the *O'Connor-Spinner* court notes, the Court found the hypothetical troubling. *Id.*

In the present case, the Court finds that neither exception is applicable. In two of the three hypotheticals, the ALJ included limitations that accounted for Claimant's limitations in concentration, persistence, or pace. Those two hypotheticals indicated that there are no jobs available to Claimant. R. 54-55. The second hypothetical was adopted by the ALJ, yet she did so without any discussion of the alternate hypotheticals. R. 20. Given that the ALJ attempted twice to include limitations that directly addressed Claimant's limitations in concentration, persistence, or pace, the Court cannot find that the ALJ's alternate phrasing excluded the tasks Claimant would have been unable to perform.

In recent years, the Seventh Circuit has addressed similar situations and the rulings in these cases necessitate a remand. In *Stewart*, the Seventh Circuit awarded fees based on the Commissioner's unjustified position that the ALJ accounted for Stewart's limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks. *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009). In *Craft*, the Seventh Circuit found there was not a logical bridge between the ALJ's review of the mental medical evidence indicating difficulty with memory, concentration, or mood swings, and the limitation to simple, unskilled work. *Craft*, 539 F.3d at 677-78. In *O'Connor-Spinner*, the Seventh Circuit cited *Stewart* and *Craft*

to support the assertion that "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. This recent case law in the Seventh Circuit directly addresses limitations in concentration, persistence, and pace and requires a remand where the RFC and resulting hypothetical did not incorporate those limitations and the ALJ failed to build the requisite logical bridge to justify the omission.

Claimant also argues that the RFC and resulting hypotheticals did not sufficiently account for her mood swings. The only evidence in the record of her mood swings comes from Claimant's self-reports. The Court acknowledges that individuals suffering from bipolar disorder often return to fairly normal levels of functioning between episodes of mania. *See, e.g.*, *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). However, the fact remains that no doctor ever saw Claimant during a "down" period. Dr. Anwar's notes indicate that Claimant tolerates her medication and, for the most part, maintains "fair" to "good" functioning. R. 395-404. Furthermore, the record is devoid of any evidence supporting how Claimant's mood swings impact or limit her ability to work. There was substantial evidence to support the exclusion of accommodations for mood swings from the RFC and hypotheticals.

**B.     The ALJ Gave Sufficient Weight to the Opinion of Dr. Anwar, Claimant's Treating Psychiatrist.**

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) well-supported by medical findings and (2) consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). When an ALJ does not give controlling weight to a treating source's opinion, the ALJ must determine how much weight that opinion should carry. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). An ALJ must "minimally articulate" her reasons for discounting a treating source's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This standard is "a very deferential standard that we have, in fact, deemed 'lax.'" *Id*. (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)).

This determination requires the consideration of: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; any evidence presented by a medical source that supports his or her opinion; consistency of the opinion with the record; whether the opinion of a specialist is related to his or her area of specialty; and any other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(d)(2)-(6). The Social Security Administration regulations assure that an adjudicator will "always give good reasons" for the weight given to the opinion of a treating source. *Id*. § 404.1527(d)(2). An ALJ's decision on the weight given to a treating source must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjucator gave to the treating source's medical opinion and the reasons for that weight. SSR 96-2P, 1996 WL 374188, at *5 (July 2, 1996).

20

It is not disputed by the parties that Dr. Anwar was a treating source who provided his opinion regarding Claimant's functioning. A letter submitted by Dr. Anwar in October 2009 opined that it is difficult for Claimant to function well and she has impaired functioning in various areas. R. 388. The ALJ recognized Dr. Anwar as Claimant's treating psychiatrist and afforded his opinion "some weight." R. 19. Claimant does not challenge the fact that Dr.Anwar was not given "controlling weight." Rather, she argues that the ALJ did not sufficiently discuss the requisite factors under 20 C.F.R. § 404.1527(d) in determining how much weight to afford Dr. Anwar's opinion.

Claimant relies heavily on *Larson v. Astrue*, where the ALJ erred by not discussing the factors listed in 20 C.F.R. § 404.1527(d). *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) ("Apart from the ALJ's unhelpful statement that Dr. Rhoades's opinion was entitled to 'some weight,' the ALJ said nothing regarding this required checklist of factors."). By contrast, the ALJ here did in fact address the requisite factors and substantial evidence supports her ultimate evaluation.

The ALJ recognized Dr. Anwar as a source with a treating relationship. R. 19. She stated that Dr. Anwar sees Claimant between every one to three months. *Id.* The ALJ reviewed Dr. Anwar's treatment notes which show that Claimant was tolerating her medication and staying good even while experiencing mood swings, which is not consistent with his ultimate opinion. *Id.* The ALJ provided a detailed discussion of the other medical evidence in the record indicating that Claimant's mental status was good, as well as a review of Claimant's daily activities. Thus, the ALJ did in fact address the nature of the relationship, the

consistency of Dr. Anwar's notes with his ultimate opinion, and the consistency of this opinion with the rest of the record.

The ALJ did far more than the ALJs in *Larson* and *Elder* where there was apparently no discussion of the aforementioned factors. The ALJ's decision to give Dr. Anwar's opinion "some weight" is both supported by substantial evidence and sufficiently articulated in compliance with 20 C.F.R. § 1527(d).

**C.     The ALJ Properly Assessed Claimant's Credibility and Considered the Factors in 20 C.F.R. § 404.1529(c)(2).**

An ALJ's credibility determination is entitled to deference because the ALJ has the opportunity to observe the claimant testify. *Simila*, 573 F.3d at 517. Thus, a credibility determination is not overturned unless it is "so lacking in explanation or support that [it is] patently wrong." *Id*. When reviewing credibility determinations, courts are to give a commonsense reading to the ALJ's opinion rather than "nitpick" for gaps or contradictions. *Castile*, 612 F.3d 923, 929 (2010).

Claimants have an incentive to exaggerate their symptoms, so an ALJ may discount testimony based on other evidence in the case. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). An ALJ should not discredit testimony solely because it is not supported by objective medical evidence, though the medical evidence is relevant. SSR 96-7P, 1996 WL 374186, at *6 (July 2, 1996) ("[O]bjective medical evidence 'is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of an individual's symptoms and the effects those symptoms may have on the individual's ability to function."

22

(quoting 20 C.F.R. § 404.1529(c)(2))). Rather, an ALJ must consider the "entire case record and give specific reasons for the weight given to the individual's statements." *Id*. at *4. The relevant factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain or symptoms; allegations of aggravating or precipitating factors; type of treatment received, medication taken and effects; other steps the individual has taken to relieve pain or symptoms; and any other factors regarding the claimant's functional limitations. *Id*. at *3.

Here, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause the symptoms she complained of, but her allegations of intensity, persistence and limiting effects of the symptoms were not credible "to the extent that they are inconsistent with the above residual functional capacity assessment." R. 18. The ALJ later stated the RFC was consistent with objective medical evidence. R. 19. Claimant takes these two statements together to argue that the credibility determination was based solely on objective medical evidence. As an initial matter, rather than implying the credibility determination was based on the RFC analysis, the Court reads the sentence cited by Claimant to state that the RFC incorporates Claimant's symptoms to the extent that the ALJ found them credible.

Claimant argues the ALJ's finding was conclusory and not based on the factors required by SSR 96-7P. Claimant focuses on one of those factors: precipitating and aggravating conditions. SSR 96-7P, 1996 WL 374186, at *3 (July 2, 1996). In support of her argument, Claimant provides a list of specific statements she made at the hearing and in SSA documents

23

about what triggers pain and other symptoms. An ALJ is not required to consider every piece of evidence in the record. *Campbell*, 627 F.3d 299, 306. Moreover, the ALJ gave sufficient consideration to the SSR 96-7p factors, including precipitating and aggravating factors. She articulated adequate support for her credibility determination such that the Court cannot find it was patently wrong.

The ALJ began by reviewing Claimant's emotional concerns and relationship history. R. 18. In the next paragraph, she identified a series of daily activities about which Claimant testified. *Id.* These activities include actively looking for a job, enrolling in college, using a computer, volunteering two times per week for six hours, attending Bible study, tending to personal needs, running errands, attending AA meetings, and driving people around. R 18-19. The Seventh Circuit has cautioned against placing too much weight on a claimant's household activities as a sign that she can hold down a full time job, but Claimant's activities are more extensive than the claimants in those cases. *See, e.g.*, *Craft*, 539 F.3d at 680 (where claimant's daily activities included a daily walk to the mailbox, vacuuming for four minutes each day, and shopping on a motorized cart); *Zuraswski v. Astrue*, 245 F.3d 881, 887 (7th Cir. 2001) (where claimant's daily activities included washing dishes, helping his children prepare for school, doing laundry, and preparing dinner).

Additionally, the ALJ considered factors well beyond Claimant's daily activities. The ALJ reviewed medical evidence that contradicted Claimant's allegations regarding her hand and back pain, including self reporting to Dr. Peterson that her only challenge in completing daily tasks, such as washing dishes and cleaning, was procrastination. R. 19, 298. This is in

24

conflict with Claimant's testimony that simple house cleaning causes pain. R. 203. Inconsistent statements are relevant in credibility determinations. 1996 WL 374186 at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Objective medical evidence from Dr. Karri included mostly normal physical findings. R. 18-19.

Consistent with SSR 96-7p, the ALJ considered the effect of Claimant's medications, noting that Dr. Anwar reported she takes psychotropic medicine and "is staying good." R. 19. Claimant's COPD is controllable with medication. *Id*. The ALJ considered that Claimant saw a chiropractor to address her back pain, who indicated that over the counter medications should alleviate symptoms. R. 19. In fact, Claimant testified that the first day she saw Dr. Johnson, the chiropractor, "about 80 percent of the pain was gone." R. 34.

Finally, Claimant alleges the ALJ did not address her extensive job history - a list of more than thirty jobs. R. 190-91. Claimant argues the ALJ should have discussed her assertion that she has "never been able to keep a job because of my outbursts of anger, mood swings, missing too many days, paranoia (people talking about me) etc." R. 213. Claimant again cites *Larson* for support but the Court finds *Larson* distinguishable. In *Larson*, the ALJ discredited a claimant's testimony about her symptoms because she "held down" part time jobs. *Larson*, 615 F.3d 744, 752. The court found the ALJ exaggerated and mis-characterized Larson's work situation and therefore reliance on that history to undermine Larson's credibility was misplaced. *Id*. Here, Claimant argues simply that her work history was not considered at all. However, the ALJ did in fact accommodate Claimant's anger outbursts and paranoia

in the RFC when she limited Claimant to minimal contact with supervisors and no contact with the general public.  R. 17.

Claimant argues that the Commissioner attempts to introduce new arguments in support of the ALJ's decision.  While the Court agrees with Claimant that the Commissioner may not supply rationale after the fact, *Larson*, 615 F.3d at 749, it is irrelevant here because the ALJ provided sufficient reasons for her credibility determination.  Certainly the ALJ could have explicitly identified the factors she was required to consider and applied them in a more direct fashion.  However, mindful of the fact that courts are to give a commonsense reading to the ALJ's credibility determination rather than nitpick, and that the ALJ did sufficiently consider the factors identified in SSR 96-7P,  the Court cannot conclude that the credibility determination was patently wrong.

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court grants Claimant's motion for summary judgment, denies the Commissioner's motion to affirm the Commissioner's decision, and remands the case to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED THIS 24TH DAY OF OCTOBER, 2011.

*Morton Denlow*

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Barry A. Schultz
Cody Marvin
The Law Offices of Barry A. Schultz,
P.C.
1601 Sherman Avenue, Suite 510
Evanston, IL 60201


**Counsel for Plaintiff**

Kathryn A. Kelly
Assistant United States Attorney
219 South Dearborn Street, Suite 500
Chicago, Illinois 60604

Rachel C. Steiner
Assistant Regional Counsel
Social Security Administration
200 West Adams Street, Suite 3000
Chicago, Illinois 60606


**Counsel for Defendant**